UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Juan Diego Ariztegui,<br>    *Plaintiff*,<br><br>    *v.*<br><br>United Technologies International Operations, Inc.,<br>    *Defendant*. | Civil No. 3:10cv672 (JBA)<br><br><br><br>November 17, 2011 |

RULING ON PLAINTIFF'S MOTION TO FILE A FOURTH AMENDED COMPLAINT

Plaintiff Juan Diego Ariztegui moves [Doc. # 76] for leave to file a fourth amended complaint against Defendants United Technologies International Operations, Inc. ("UTIO") and Helicopter Support, Inc. ("HSI"). Plaintiff's claims against HSI and his CUTPA claims were dismissed in March 2011 [Doc. # 62]. Defendants oppose and argue that Plaintiff has failed to establish the requisite good cause for a fourth amendment of the complaint.

I.   Factual Background

On April 30, 2010 Plaintiff filed the Original Complaint [Doc. # 1] against six defendants: UTIO, HSI, Sikorsky Aircraft Corporation ("Sikorsky"), Associated Aircraft Group ("AAG"), Schweizer Aircraft Corporation ("Schweizer"), and Samir Mehta, asserting claims of breach of contract, breach of the implied covenant of good faith and fair dealing, quantum meruit, defamation, and a violation of CUTPA. On June 8, 2010, Defendants filed a motion [Doc. # 23] for a pre–filing conference, outlining their intended motion to dismiss the complaint. On June 28, 2010, Plaintiff filed an Amended Complaint [Doc. # 28] to address some of the deficiencies identified in Defendants' motion for a pre–filing conference: Plaintiff removed AAG as a defendant and removed breach of contract and implied covenant claims against certain Defendants.

On July 12, 2010, the Court held a telephonic pre–filing conference, during which the Court advised Plaintiff that any further amendments to the complaint were required to be made before Defendants filed their motion to dismiss:

> The purpose of my prefiling conference is to give you that understanding of what they intend to move on and then give you an opportunity to amend your complaint, if you choose to, to address any of the deficiencies . . . [a]nd the reason that I do this is so that the defendant can focus the challenges on a finalized complaint and we can deal with the legal issues on a finalized complaint because you will have already had the opportunity to amend around them, if they can be amended around, and so you wouldn't be given a chance if the motion were granted to amend further having already had that opportunity.

(Pre–Filing Conference Tr., Ex. A to Def.'s Opp'n [Doc. # 80] at 3:9–23.) Plaintiff's counsel, Mr. Headley, acknowledged that he understood the purpose of the pre–filing conference stating: "And so if we understand . . . if we could improve the lack of clarity today in this conference, we would be given one more opportunity to amend." (*Id.* at 4:9, 4:11–13.)

On July 9, 2010 Plaintiff filed a Second Amended Complaint that added certain factual allegations to the defamation count [Doc. # 28], and Defendants filed their anticipated motion to dismiss on August 9, 2010. On November 2, 2010, Plaintiff sought to amend his complaint a third time [Doc. # 45], which was granted over the Defendants' objection [Doc. # 58]. On March 28, 2011, the Court ruled on [Doc. # 62] Defendants' motion to dismiss, using the allegations of the Third Amended Complaint, and dismissed all claims against Sikorsky, HSI, Schweizer, and Samir Mehta, the quantum meruit, defamation, and CUTPA claims against UTIO, and some of the breach of contract and implied covenant claims against UTIO:

> Defendants' Motion to Dismiss is DENIED as to Plaintiff's breach of contract and breach of the implied covenant claims against UTIO based on Plaintiff's

>allegations that UTIO invoiced the [Argentine government] directly to avoid paying Plaintiff commissions owed, and Defendants' motion is GRANTED as to all other claims and all other Defendants.

(Ruling on Motion to Dismiss at 23.)

Plaintiff moved for reconsideration [Doc. # 64] on the ground that the Court overlooked allegations in the Third Amended Complaint that HSI failed to pay Plaintiff rebates under the Independent Supplier Agreement but thereafter withdrew [Doc. # 69] his motion for reconsideration.

On April 22, 2011, during the course of discovery, defense counsel for UTIO acknowledged the existence of additional rebates of $20,564.96 owed to Plaintiff. (*See* Email from Steven Greenspan to Tim Headley, Ex. H to Pl.'s Mot. to Amend ("Lastly, as we discussed, unpaid HSI rebates of $20,564.96 will be sent to the same bank account we used last time on Tuesday. . . . these are unpaid HIS [sic] rebates for products purchases by Diego. . . [t]he spreadsheet indicates that they are 'commissions,' but they are in fact rebates.")) UTIO paid Plaintiff $20,564.96 on April 26, 2011. A few months later, Defendant's counsel agreed that "an additional $7,073.88 plus interest is owed to Plaintiff for unpaid HSI rebates" (*see* Ex. J [Doc. # 76–13] to Pl.'s Mot. to Amend), but did not pay this acknowledged debt until two days after Plaintiff moved for leave to file a Fourth Amended Complaint to reassert breach of contract and breach of implied covenant claims against HSI for non–payment of rebates under the Independent Supplier Agreement [Doc. # 76–3] and a CUTPA claim against both UTIO and HSI for misrepresentations regarding unpaid debts identified as: (1) rebate of $7,073.88 plus interest, (2) rebate of $266.18 plus interest for invoices associated with an order placed before the rebate agreement became effective, but invoiced (and paid) after the agreement became effective, (3) full–time FSR commissions of

$8,437.08, plus interest, related to field service representatives which Defendants disagree was owed. (*See* Def.'s Mem. Opp'n [Doc. # 80] at 15.)

II. Discussion

    A. Legal Standard

Leave to amend should be denied only when "there is evidence of undue delay, bad faith, undue prejudice to the non–movant, or futility." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). However, Federal Rule of Civil Procedure 16(b) governs motions to amend the complaint when the deadline for amendments set forth in the scheduling order has passed.[1] *See Lowry v. Eastman Kodak Co.*, 14 Fed. Appx. 27, 30 (2d Cir. 2001). "Once the deadline for amendment in a scheduling order has passed, leave to amend may be denied where the moving party has failed to establish good cause." *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 267 (2d Cir. 2009). The movant bears the burden of establishing satisfactory reasons warranting leave to amend. *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 2009).

---

[1] Despite the liberal standard for amendment of a complaint under Rule 15(a),Plaintiff's motion for leave to amend the complaint was filed after the July 19, 2010 deadline for filing amended pleadings as established by the Court's scheduling order, and a showing a good cause is required. *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340–41 (2d Cir. 2000) ("Several circuits have ruled that the Rule 16(b) "good cause" standard, rather than the more liberal standard of Rule 15(a), governs a motion to amend filed after the deadline a district court has set for amending the pleadings. . . .We now join these courts in holding that despite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause. Moreover, we agree with these courts that a finding of "good cause" depends on the diligence of the moving party.").

B.      Whether Plaintiff Can Establish Good Cause to Amend his Complaint

Defendant argues that Plaintiff cannot establish good cause for amending the complaint a fourth time because he has "had numerous opportunities to correct the deficiencies identified with respect to HSI and the CUTPA claim but instead maintained that the claims were adequately plead." (Def.'s Mem. Opp'n at 9.)

In *Rosner v. Star Gas Partners, L.P.*, the Second Circuit upheld this Court's denial of a motion for leave to amend a complaint after granting a motion to dismiss following a similar pre–filing conference:

> The district court gave plaintiffs–appellants the opportunity to amend the Complaint after a pre–motion telephone conference where the defendants described their arguments in favor of dismissal. Plaintiffs–appellants declined to do so. Thereafter, plaintiffs–appellants did not move to amend the Complaint after the defendants filed their briefs in support of dismissal. Although plaintiffs–appellants informally requested leave to amend in their motion papers, they did not submit proposed amendments or otherwise indicate how they would correct any deficiencies in the Complaint. Under these circumstances, it was within the district court's discretion to dismiss the Complaint with prejudice.

344 F. App'x 642, 645 (2d Cir. 2009). Other recent Second Circuit decisions have similarly affirmed orders from other district courts denying leave to amend where the plaintiff has failed to correct deficiencies in earlier pleadings. *See, e.g.*, *Smugglers Notch Homeowners' Ass'n v. Smugglers Mgmt. Co.*, 414 F. App'x 372, 377–28 (2d Cir. 2011) ("Moreover, as the district court rightly noted, Homeowners received an opportunity to amend their complaint after Smugglers' Notch filed its memorandum of law delineating inadequacies in Homeowners' original complaint, yet still failed to state a claim. Under such circumstances, we decline to find that the district court abused its discretion in denying Homeowners leave to replead."); *Endovasc Ltd. v. J.P. Turner & Co.*, 169 F. App'x 655, 657–58 (2d Cir. 2006)

5

("Moreover, Endovasc knew that the Second Amended Complaint would serve as its "final amended complaint" and never objected to the district court's repeated orders that additional amendments would not be permitted. In these circumstances, the district court did not abuse its discretion in denying leave to amend."); *see also* 6 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1487, at 643–45 (3rd ed. 2004) ("[I]f the court determines that plaintiff has had sufficient opportunity to state a claim but has failed to do so, leave to amend may be denied.").

Plaintiff now attempts to amend the complaint more than six months after the Court's ruling on the motion to dismiss. His delay in seeking leave to amend is not explained by newly–discovered, previously unavailable evidence (discovery cut–off has been extended to December 1, 2011), since he became aware of the additional unpaid rebates in April 2011 and waited over five months before seeking an amendment. *See Lowry v. Eastman Kodak Co.*, 14 F. App'x 27, 30 ("Even assuming, as [Plaintiff] claims, he did not discover evidence to support his new theory until February 2000, he did not seek to amend his complaint until five months after the new evidence surfaced. Discovery had closed, and a motion for summary judgment was pending. Given these circumstances, we find the district court did not abuse its discretion in denying plaintiff permission to amend.").

### 1. *Breach of Contract Claims Against HSI*

Plaintiff seeks to reassert his breach of contract claim against HSI based on its failure to pay rebates to Plaintiff, the same allegations contained in the Third Amended Complaint. (*See* Third Am. Compl. [Doc. # 59] ¶¶ 102–104, 111–112, 114.) Plaintiff alleges that "both UTIO and HSI failed to pay Mr. Ariztegui commissions and rebates pursuant to their agreements," and "by failing to pay the contractually required commissions and rebates,

UTIO and HSI breached their contracts with Mr. Ariztegui, who is entitled to full payment from them." (Fourth Am. Compl. [Doc. # 76–3] ¶¶ 39–40.) Defendants argue that Plaintiff has abandoned this claim, because he never responded to Defendants' argument that the claim against HSI should be dismissed, either in his opposition to the motion to dismiss, or his surreply briefs, or at oral argument, and Plaintiff withdrew his request for reconsideration of the Court's dismissal of the claim from the case.

Federal courts "have the discretion to deem a claim abandoned when a defendant moves to dismiss that claim and the plaintiff fails to address in their opposition papers defendants' arguments for dismissing such a claim." *Robinson v. Fischer*, No. 09 Civ. 882, 2010 U.S. Dist. LEXIS 137660, *32 (S.D.N.Y. Dec. 29, 2010); *see also Hanig v. Yorktown Cent. Sch. Dist.*, 384 F. Supp. 2d 710, 723 (S.D.N.Y. 2005) ("Consequently, because plaintiff did not address defendant's motion to dismiss with regard to this claim, it is deemed abandoned and is hereby dismissed."). Thus Mr. Ariztegui's claims of breach of contract and breach of the implied covenant against HSI is deemed abandoned.

Defendants also argue that Plaintiff's proposed amendment is futile because the damages he claims from breach of contract have been paid. Plaintiff's only allegation of damages against HSI in his proposed Fourth Amended Complaint is:

> In that same letter of August 2, 2011, UTIO admitted, in Mr. Mueller's letter, that "an additional $7,073.88 plus interest is owed to Plaintiff for unpaid HSI rebates". As of the date of the motion to file this fourth amended complaint, neither UTIO nor HSI has paid a penny of that amount.

(Fourth Am. Compl. ¶ 31.) Two days after Plaintiff's motion to amend, HSI wired payment in the amount of $9,560.75 to Plaintiff's counsel, representing "the $7073.89 in unpaid rebates, interest on those rebates at the rate of 3.25%, and interest on the rebates paid on

April 26, 2011 at the rate of 3.25%." (*See* October 10, 2011 Email from Jeffrey Mueller to Tim Headley, Ex. E to Def.'s Opp'n.) Plaintiff makes no claim of additional amounts owed and this amendment is denied on grounds of futility because the debt has been recovered against HSI.[2]

As to Plaintiff's remaining claim for damages against HSI, Defendants argue that Plaintiff is not entitled to a rebate of $268.18 plus interest for purchase orders before the effective date of the Independent Supplier Agreement, as the agreement became "effective as of February 1, 2006," and this rebate was associated with orders placed before the agreement became effective. (*See* Pl.'s Mot. To Amend at 7.) Plaintiff acknowledges that the Independent Supplier Agreement is silent on the issue of whether a rebate is owed for orders placed before its effective date but paid after that date, but argues that any ambiguity should be decided in favor of Mr. Ariztegui because HSI drafted the agreement. (*See id.* at 7–8.) From this timing dispute, it is obvious that this particular claim could have been brought at the outset of the case, as Plaintiff is not relying upon new information or evidence to support this claim. Accordingly, Plaintiff's motion to amend the complaint to belatedly add a claim against HSI for $268.18 plus interest is denied.

---

[2] Defendant UTIO represents that in the course of discovery, "HSI discovered that it owed additional amounts for unpaid rebates under the Independent Supplier Agreement" and that "[d]espite the fact that HSI had been dismissed from the case, HSI was committed to ensuring that it make all payments owed under the Independent Supplier Agreement." (Def.'s Mem. Opp'n at 4–5.) On April 26, 2011 HSI wired payment for $20,564.96 in unpaid rebates to Plaintiff's counsel (*see* Ex. D to Def.'s Mem. Opp'n), and on October 7, 2011, wired a final payment of $9560.75 (*see* Ex. E).

### 2.     Additional Breach of Contract Claim against UTIO

Plaintiff also seeks to amend his complaint to add a claim that he is entitled to "Full–time FSR commissions of $8,437.08, plus interest, related to recorded FSR visits to Argentina." (Pl.'s Mot. to Amend at 7.) This claim does not pertain to HSI, and has been the subject of the parties' damages discovery. The dispute over UTIO's liability for this item of damages will be addressed at trial. It is unnecessary to amend the complaint to particularize it.

### 3.     Plaintiff's CUTPA Claim

Finally, Plaintiff seeks to amend his complaint to again assert CUTPA claims against defendants UTIO and HSI. Plaintiff argues that there is clear evidence that Defendants repeatedly breached their contracts with Plaintiff, and that they "repeatedly misrepresented whether they owed him money."[3] Previously, the Court found that Plaintiff had failed to alleged sufficient facts to establish conduct that "falls within the penumbra of CUTPA violations." (Ruling at 21.) In his proposed Fourth Amended Complaint, the only new facts alleged are, in essence, that Defendants persistently and unreasonably denied that they owed him any more money, when in fact they did owe money, as they now concede.

> 47. The breaches of contract in this case involved numerous instances of intentional misrepresentation.

---

[3] The case cited by Plaintiff to support his claim in Plaintiff's Memorandum in Support of his Motion to File a Fourth Amended Complaint, *IndyMac Bank, F.S.B. v. Reyad*, seems distinguishable in that there, the court held that CUTPA was violated "[b]ecause the breaches of contract in this case involved numerous instances of intentional misrepresentation," including "altering, forging, and misrepresenting information on mortgage applications and related documents." 2006 U.S. Dist. LEXIS 55272, *16–17 (D. Conn. July 26, 2006).

>48. The conduct of UTIO and HSI was clearly unfair in the context of existing contract law, and was not according to "general sensibilities", because they vehemently accused the plaintiff of bad faith, and of pursuing meritless claims, when the defendants' own internal records clearly showed the opposite of their false and malicious allegations.

(Pl.'s Fourth Am. Compl. ¶¶ 47–48.)

This conduct is insufficient to state a claim under CUTPA, although it may fall within Plaintiff's breach of contract and breach of duty of good faith and fair dealing claims against UTIO, and the amendment sought is therefore futile. *See Phillips Indus. Serv. Corp. v. Conn. Light & Power Co.*, No. 409665, 1999 Conn. Super. LEXIS 779, *7–8 (Super. Ct. Mar. 22, 1999) ("Although the plaintiff employs the word 'misrepresentation' in count three, the CUTPA count, the plaintiff has failed to allege facts that indicate any substantial aggravating circumstance.").[4]

---

[4] Even if the facts alleged by Plaintiff were construed to claim a CUTPA violation based on negligent misrepresentation, negligent misrepresentations alone are insufficient under CUTPA. *See Thames River Recycling v. Gallo*, 50 Conn. App. 767, 786 (Conn. App. 1998); *Kawanobe v. Smith*, No. CV085004343S, 2009 Conn. Super. LEXIS 1709, at *9–11 (Super. Ct. June 23, 2009) (Allegations of failure to exercise diligence in presenting accurate information, innocent misrepresentation of a material fact and negligent misrepresentation of a material fact do not rise to the level of immoral and unscrupulous behavior that CUTPA was enacted to combat.")

III.  Conclusion

Based on the foregoing, Plaintiff's motion to file a proposed fourth amended complaint [Doc. # 76] is DENIED.

                                             IT IS SO ORDERED.

                                             /s/
                                        Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 17th day of November, 2011.